UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

CRIS AVERY BEJAMIN,

                              Plaintiff,

- against -

CITY OF JERSEY CITY, JERSEY CITY POLICE DEPARTMENT, POLICE OFFICER ("P.O.") M. STROTHERS, BADGE NO. 609, P.O. D. VERDEJO, BADGE NO. 3353, P.O. GOMEZ, P.O. REZABALA, THE JERSEY CITY MEDICAL CENTER, MEDICAL DOCTOR ("M.D.") RITU CHANDAK, M.D. INCI BIJAN, M.D. ADEFRIS ADAL, GINA PAOLA VEREZA, *as administrator of the estate of* M.D. JONATHAN CARVAJAL, PATIENT CARE TECHNICIAN EDWIN GUTIERREZ, REGISTERED NURSE ("R.N.") AMANDA TOBIAS, R.N. ANDREA ANDRADE, R.N. CATHERINE MAINA, R.N. MARISSA LORTZ, R.N. REINERO ARCEGA, R.N. BRIAN KIERNAN, SENIOR PRIMARY THERAPIST ("S.P.T.") JOHANNLIZ SANCHEZ, S.P.T. DESERAY LEONEL GRAHAM, BRENDA CLARK, and THERESE GROLLY.

                              Defendants.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

23-CV-22570 (ES) (JSA)

---

Plaintiff Cris Avery Benjamin, by and through his attorneys at Transgender Law Center and Beldock Levine & Hoffman, LLP, alleges as follows:

**PRELIMINARY STATEMENT**

1. Cris Avery Benjamin brings this civil rights action under the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983, as well as under the Constitution and laws of the State of New Jersey, seeking to recover for injuries caused by Defendants' violations of his rights.

1

2. Mr. Benjamin's rights were violated when officers from the Jersey City Police Department ("JCPD") involuntarily committed Mr. Benjamin, and then staff members at the Jersey City Medical Center ("JCMC") kept Mr. Benjamin involuntarily committed for five days, restrained him against his will, and medicated him over objection, all while Mr. Benjamin was not a danger to himself or others.

3. Mr. Benjamin now seeks redress for the substantial injuries he suffered, including but not limited to: (i) compensatory damages for his physical injuries, psychological and emotional distress, and financial loss caused by the illegal actions of Defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including attorneys' fees and costs, as this Court deems just and equitable.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Mr. Benjamin's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4) and over his state law claims pursuant to 28 U.S.C. § 1367.

5. Mr. Benjamin has fulfilled all of the prerequisites for filing his state law claims.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Mr. Benjamin's claims arose in the District of New Jersey.

## PARTIES

7. Plaintiff Cris Avery Benjamin is, and was at all relevant times, a resident of Brooklyn, New York.

### I. The Municipal Defendants

8. The Defendants named in this section are collectively referred to as the "Municipal Defendants" and are sued under a *Monell* theory of liability for federal claims and a *respondeat superior* theory of liability for state law claims.

9. Defendant City of New Jersey ("Jersey City") is a municipal corporation and a public employer of the Individual Defendants.

10. Defendant Jersey City Police Department ("JCPD") is, and was at all relevant times, a division or department of Jersey City, entrusted with, among other things, enforcing federal, state, and local laws and ordinances, and otherwise ensuring the safety of people and property within the jurisdictional limits of Jersey City.

## II. The Individual Defendants

11. The Defendants in this section are collectively referred to as the "Individual Defendants" and are sued in their individual capacities.

12. At all relevant times, the Individual Defendants were engaged in joint ventures, assisting each other in performing the various actions described in this Complaint, and lending their physical presence and support and the authority of their offices to one another.

### A. The Police Officer Defendants

13. The Defendants listed in this subsection are collectively referred to as the "Police Officer Defendants."

14. The Police Officer Defendants acted under color of state law in the course and scope of their duties and functions as agents, servants, employees, and officers of Jersey City and the JCPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of Jersey City and the JCPD, with the power and authority vested in them as officers, agents, and employees of Jersey City and the JCPD and incidental to the lawful pursuit of their duties as officers, employees, and agents of Jersey City and the JCPD.

15. At all relevant times, the Police Officer Defendants were engaged in joint ventures, assisting each other in performing the various actions described in this Complaint, and lending

their physical presence and support and the authority of their offices to one another.

16. Defendant Police Officer ("P.O.") M. Strothers, Badge No. 609, of North Unit 503, is, and was at all relevant times, an officer of the JCPD.

17. Defendant P.O. D. Verdejo, Badge No. 3353, of the North Unit 503, is, and was at all relevant times, an officer of the JCPD.

18. Defendant P.O. Gomez, of the North Unit 203, is, and was at all relevant times, an officer of the JCPD.

19. Defendant P.O. Rezabala, of the North Unit 203, is, and was at all relevant times, an officer of the JCPD.

**B.     The JCMC Defendants**

20. The Defendants named in this subsection are collectively referred to as the "JCMC Defendants."

21. By involuntarily detaining, restraining, and treating Mr. Benjamin over objection, the JCMC Defendants acted under color of law and as agents of Jersey City.

22. At all relevant times, the JCMC Defendants were engaged in joint ventures, assisting each other in performing the various actions described in this Complaint, and lending their physical presence and support and the authority of their offices to one another.

23. Defendant Jersey City Medical Center ("JCMC") is, and was at all relevant times, a corporation whose principal place of business is 355 Grand Street, Jersey City, New Jersey, 07302. Jersey City Medical is sued in its individual capacity, and under a *respondeat superior* theory of liability for the actions of the other JCMC Defendants.

24. Defendant medical doctor ("M.D.") Ritu Chandak is, and was at all relevant times, an employee of JCMC.

4

25. Defendant M.D. Inci Bijan is, and was at all relevant times, an employee of JCMC.

26. Defendant M.D. Adefris Adal is, and was at all relevant times, an employee of JCMC.

27. Defendant M.D. Jonathan Carvajal is, and was at all relevant times, an employee of JCMC.  (Mr. Carvajal is now deceased, so Plaintiff brings this suit against Gina Paola Verdeza, as administrator of his estate.)

28. Defendant patient care technician ("P.C.T.") Edwin Gutierrez is, and was at all relevant times, an employee of JCMC.

29. Defendant registered nurse ("R.N.") Amanda Tobias is, and was at all relevant times, an employee of JCMC.

30. Defendant R.N. Andrea Andrade is, and was at all relevant times, an employee of JCMC.

31. Defendant R.N. Catherine Maina is, and was at all relevant times, an employee of JCMC.

32. Defendant R.N. Marissa Lortz is, and was at all relevant times, an employee of JCMC.

33. Defendant R.N. Reinero Arcega is, and was at all relevant times, an employee of JCMC.

34. Defendant R.N. Brian Kiernan is, and was at all relevant times, an employee of JCMC.

35. Defendant senior primary therapist ("S.P.T.") Johannliz Sanchez is, and was at all relevant times, an employee of JCMC.

36. Defendant S.P.T. Deseray Leonel Graham is, and was at all relevant times, an

employee of JCMC.

37. Defendant Brenda Clark is, and was at all relevant times, an employee of JCMC.

38. Defendant Therese Grolly is, and was at all relevant times, an employee of JCMC.

## FACTS

39. Mr. Benjamin is a Black, transgender man who is autistic.

### *Initial Detention*

40. At approximately 8 p.m. on November 24, 2021, near 470 Tonnelle Avenue, Jersey City, New Jersey, 07307, Mr. Benjamin noticed damage to his parked car consistent with a hit and run.

41. Mr. Benjamin entered the establishment at 470 Tonnele Ave.—White Mana Diner—and asked to use the phone to call the police to report the hit-and-run.

42. When police arrived, they did not help Mr. Benjamin.

43. Instead, Defendant P.O. Strothers, Verdejo, Gomez, and Rezabala detained Mr. Benjamin on an involuntary psychiatric hold, despite no evidence that Mr. Benjamin was a danger to himself or others.

44. Without any justification for placing Mr. Benjamin under a psychiatric hold, P.O. Strothers, Gomez, Verdejo, and Rezabala physically seized Mr. Benjamin to place him under a psychiatric hold.

45. P.O.s Strothers, Gomez, Verdejo, and Rezabala forced Mr. Benjamin's hands behind his back and handcuffed him.

46. P.O.s Strothers, Gomez, and Verdejo pulled Mr. Benjamin out of the diner by his handcuffed arm, despite Mr. Benjamin telling the officers that they were hurting him, with P.O. Rezabala assisting them by opening the door.

47. P.O.s Strothers, Gomez, and Verdejo then lifted Mr. Benjamin and thrust him into

a wheelchair, and physically restrained him into the chair against his will, with his hands still handcuffed behind his back.

48. P.O.s Strothers, Gomez, and Verdejo wheeled Mr. Benjamin outside, removed him from the wheelchair, forced him into a stretcher, and again physically retrained him against his will.

49. P.O.s Strothers, Gomez, Verdejo, and Rezabala forced Mr. Benjamin into an ambulance.

50. P.O.s Verdejo and Gomez continued to detain Mr. Benjamin in the ambulance, repeatedly physically forcing Mr. Benjamin down, even as Mr. Benjamin told them that they were being violent with him.

51. P.O.s Strothers and Rezabala assisted with the continued detention by separately driving to the hospital to meet P.O.s Strothers and Rezabala there.

52. Upon information and belief, Defendant Police Officers acted pursuant to a City policy allowing them to place people under involuntary psychiatric holds without evidence that the people being detained are a danger to themselves or others.

*Assault and Investigation*

53. The ambulance transported Mr. Benjamin to the JCMC.

54. After Mr. Benjamin was taken to the JCMC, Mr. Benjamin informed P.O.s Strothers, Gomez, Verdejo, and Rezabala that the handcuffs and restraints were cutting off circulation to his right hand, but they refused to adjust the restraints.

55. P.O.s Strothers, Gomez, Verdejo, and Rezabala physically forced Mr. Benjamin from a stretcher into a hospital bed, despite him telling them that doing so—particularly with the handcuffs still too tight—was hurting him.

56. At this juncture, Defendants still had no indication or determination that Mr.

Benjamin was a danger to himself or others.

57. Nevertheless, P.O.s Strothers, Gomez, Verdejo, and Rezabala, along with Defendant Gutierrez, forcibly stripped Mr. Benjamin naked while he cried out in pain and trauma.

58. While stripping naked Mr. Benjamin—a trans man—Defendants Gutierrez, Strothers, Gomez, Verdejo, and Rezabala called Mr. Benjamin a "little girl" and told him that he was not "being a man."

59. Defendants Gutierrez, Strothers, Gomez, Verdejo, and Rezabala continued to forcibly restrain Mr. Benjamin onto the hospital bed, despite Mr. Benjamin telling them that they were hurting him and restricting his breathing.

60. Defendants Gutierrez, Strothers, Gomez, Verdejo, and Rezabala punched and elbowed Mr. Benjamin in his head, while making racist and anti-transgender comments.

61. That same day, Mr. Benjamin called the JCPD to report the assault.

62. The JCPD, however, did not respond for two days, allowing any evidence of the assault to dissipate or be destroyed.

63. Two days later, officers finally responded to the JCMC and spoke to Mr. Benjamin.

64. Mr. Benjamin told the responding officer that he had been physically and sexually assaulted, and that there was not justification for his continued detention, but the responding officers did nothing to end the unlawful psychiatric hold or take any steps to protect Mr. Benjamin.

*Five Day Detention*

65. After being transported to the JCMC, Mr. Benjamin was involuntarily detained at for five days, restrained against his will, and treated over objection despite not being a danger to himself or others.

66. For example, on November 24, 2021, Defendant Adal ordered that Mr. Benjamin be placed in a locked, four-point restrain—and other JCMC Defendants placed Mr. Benjamin in a

locked, four-point restraint.

67. As another example, on November 27, 2021, Defendant Tobias injected Mr. Benjamin with 5 milligrams of Haldol against his will.

68. Mr. Benjamin was involuntarily detained at JCMC on November 24, 2021, and not discharged until November 29, 2021.

69. Mr. Benjamin's detention and the other injuries he suffered during that detention were the result of the actions of the Individual Defendants.

70. Some of the actions that caused and prolonged Mr. Benjamin's detention and resulted in the other injuries he suffered during that detention include the following:

    a. On November 24, 2021, Defendant Grolly screened Mr. Benjamin and determined that he was a danger to himself despite no evidence to support that determination.

    b. On November 25, 2021, Defendant Arcega falsely reported that Mr. Benjamin suffered from paranoid delusions, despite having no reasonable basis to believe that was true, and recommended that Mr. Benjamin be involuntarily detained, despite having no reason to believe that Mr. Benjamin was a danger to himself or others.

    c. On November 25, 2021, Defendant Lortz falsely reported that Mr. Benjamin was psychotic, despite having no reason to believe that was true.

    d. On November 25, 2021, Defendant Maina falsely reported that Mr. Benjamin had paranoid delusions, despite having no reason to believe that was true.

    e. On November 25, 2021, Defendant Sanchez falsely reported that Mr. Benjamin suffered from paranoid delusions that caused him to put himself in unsafe situations, despite having no reason to believe that was true.

    f. On November 25, 2021, Defendant Graham falsely reported that Mr. Benjamin was irritable and agitated, exhibited bizarre and aggressive behavior, and had poor coping and problem-solving skills, despite having no reason to believe that was true.

    g. On November 25, 2021, Defendant Carvajal ordered that Mr. Benjamin be involuntarily held overnight for observation, despite having no reason to believe that Mr. Benjamin was a danger to himself or others.

  h. On November 26, 2021, Defendant Clark falsely reported that Mr. Benjamin was in need of inpatient psychiatric treatment for his own safety and stability, despite having no reason to believe that was true.

  i. On November 26, 2021, Defendant Kiernan falsely reported that Mr. Benjamin suffered from impulsive and intrusive behavior, despite having no reason to believe that was true, and recommended that JCMC continue to involuntarily detain Mr. Benjamin, despite having no reason to believe that Mr. Benjamin was a danger to himself or others.

  j. On November 26, 2021, Defendant Andrade falsely reported that Mr. Benjamin was hyperverbal, manic, and easily agitated, despite having no reason to believe that was true.

  k. On November 27, 2021, Defendant Tobias falsely reported that Mr. Benjamin could not be verbally redirected and yelled at JCMC staff, despite having no reason to believe that was true.

  l. Throughout Mr. Benjamin's unlawful detention, Defendant Bijan falsely diagnosed Mr. Benjamin with mental and behavioral conditions that Mr. Benjamin did not have, despite having no reason to believe that Mr. Benjamin had those mental and behavioral conditions, and ordered Mr. Benjamin to be involuntarily given medication and other treatment that Mr. Benjamin did not need, despite having no reason to believe that Mr. Benjamin needed those medications and other treatment.

  m. Throughout Mr. Benjamin's unlawful detention, Defendant Chandak was Mr. Benjamin's attending physician and thus responsible for all of the unlawful actions of all of the other JCMC Defendants.

## COUNT ONE
### 42 U.S.C. § 1983, United States Constitution, Amendment IV
### Unlawful Detention
*Against the Individual Defendants*

71. By the acts and omissions described above, the Individual Defendants deprived Mr. Benjamin of his clearly established right to be free from an unlawful detention under the United States Constitution.

72. The Individual Defendants' violations of that right caused Mr. Benjamin to suffer physical, mental, emotional, and economic damages.

**COUNT TWO**
**42 U.S.C. § 1983, United States Constitution, Amendment IV**
**Excessive Force**
*Against the Individual Defendants*

73.     By the acts and omissions described above, the Individual Defendants deprived Mr. Benjamin of his clearly established right not to be subjected to excessive force under the United States Constitution.

74.     The Individual Defendants' violations of that right caused Mr. Benjamin to suffer physical, mental, emotional, and economic damages.

**COUNT THREE**
**42 U.S.C. § 1983, United States Constitution, Amendment XIV**
**Equal Protection**
*Against the Individual Defendants*

75.     By the acts and omissions described above, the Individual Defendants deprived Mr. Benjamin of his clearly established right to equal protection under the law, pursuant to the United States Constitution.

76.     The Individual Defendants' violations of that right caused Mr. Benjamin to suffer physical, mental, emotional, and economic damages.

**COUNT FOUR**
**42 U.S.C. § 1983, United States Constitution, Amendment XIV**
**Inadequate Medical Care**
*Against the Individual Defendants*

77.     By the acts and omissions described above, the Individual Defendants deprived Mr. Benjamin of his clearly established right to adequate medical care under the United States Constitution.

78.     The Individual Defendants' violations of that right caused Mr. Benjamin to suffer physical, mental, emotional, and economic damages.

## COUNT FIVE
### 42 U.S.C. § 1983, United States Constitution, Amendment XIV
### Bodily Autonomy
*Against the Individual Defendants*

79. By the acts and omissions described above, the Individual Defendants deprived Mr. Benjamin of his clearly established right to bodily autonomy under the United States Constitution.

80. The Individual Defendants' violations of that right caused Mr. Benjamin to suffer physical, mental, emotional, and economic damages.

## COUNT SIX
### 42 U.S.C. §1983, *Monell* Liability for Constitutional Violations
*Against the Municipal Defendants*

81. The Individual Defendants violations of Mr. Benjamin's constitutional rights were a direct result of the Municipal Defendants' unconstitutional customs or policies.

82. The Municipal Defendants are thus liable for all of Mr. Benjamin's injuries that were caused by the Individual Defendant's violations of his constitutional rights.

## COUNT SEVEN
### New Jersey State Constitution, Article I, Section 7
### Excessive Force
*Against All Defendants*

83. By the acts and omissions described above, the Individual Defendants deprived Mr. Benjamin of his clearly established right not to be subjected to excessive force under the Constitution and laws of the State of New Jersey.

84. The Individual Defendants' violations of that right caused Mr. Benjamin to suffer physical, mental, emotional, and economic damages.

## COUNT EIGHT
### New Jersey State Constitution, Article I, Section 7
### Unlawful Detention
*Against All Defendants*

85. By the acts and omissions described above, the Individual Defendants deprived Mr.

12

Benjamin of his clearly established right not to be free from unlawful detention under the Constitution and laws of the State of New Jersey.

86. The Individual Defendants' violations of that right caused Mr. Benjamin to suffer physical, mental, emotional, and economic damages.

## COUNT NINE
### New Jersey State Constitution, Article I, Section 5
### Equal Protection
*Against All Defendants*

87. By the acts and omissions described above, the Individual Defendants deprived Mr. Benjamin of his clearly established right to equal protection under law, pursuant to the Constitution and laws of the State of New Jersey.

88. The Individual Defendants' violations of that right caused Mr. Benjamin to suffer physical, mental, emotional, and economic damages.

## COUNT TEN
### New Jersey State Law Against Discrimination
*Against All Defendants*

89. By the acts and omissions described above, the Individual Defendants deprived Mr. Benjamin of his clearly established rights under New Jersey's Law Against Discrimination.

90. The Individual Defendants' violations of that right caused Mr. Benjamin to suffer physical, mental, emotional, and economic damages.

## COUNT ELEVEN
### New Jersey State Constitution and Laws
### Intentional and Negligent Infliction of Emotional Distress
*Against All Defendants*

91. By the acts and omissions described above, Defendants engaged in extreme and outrageous conduct, which intentionally or negligently caused Mr. Benjamin to suffer severe emotional distress, causing him physical, mental, emotional, and economic damages.

92. Defendants thus violated Mr. Benjamin statutory and common law rights as

guaranteed by the Constitution and laws of the State of New Jersey.

### COUNT TWELVE
### New Jersey State Constitution and Laws
### Negligence
*Against All Defendants*

93. At all times relevant to this Complaint, Mr. Benjamin was in Defendants' care and custody.

94. Defendants thus had a duty of care to provide for Mr. Benjamin's safety.

95. Defendants violated that duty by failing to supervise the JCPD, JCMC, and their employees, in a manner that would reasonably provide for the safety of Mr. Benjamin, causing Mr. Benjamin to suffer physical, mental, emotional, and economic damages.

96. Defendants thus violated Mr. Benjamin's statutory and common law rights as guaranteed by the Constitution and laws of the State of New Jersey.

### COUNT THIRTEEN
### New Jersey State Constitution and Laws
### Assault and Battery
*Against All Defendants*

97. By the acts and omissions described above, Defendants did inflict assault and battery upon Mr. Benjamin. The acts and conduct of Defendants were the direct and proximate cause of injury and damage to Mr. Benjamin and violated his statutory and common law rights as guaranteed by the Constitution and laws of the State of New Jersey.

98. The Individual Defendants' violations of that right caused Mr. Benjamin to suffer physical, mental, emotional, and economic damages.

### COUNT FOURTEEN
### New Jersey State Constitution and Laws
### False Arrest and Imprisonment
*Against All Defendants*

99. By the acts and omissions described above, Defendants falsely arrested Mr.

14

Benjamin, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so. The acts and conduct of Defendants were the direct and proximate cause of injury and damage to Mr. Benjamin and violated his statutory and common law rights as guaranteed by the Constitution and laws of the State of New Jersey.

100. The Individual Defendants' violations of that right caused Mr. Benjamin to suffer physical, mental, emotional, and economic damages.

### COUNT FIFTEEN
### New Jersey State Constitution and Laws
### Medical Malpractice
*Against All Defendants*

101. By the acts and omissions described above, Defendants committed medical malpractice. The acts and conduct of Defendants were the direct and proximate cause of injury and damage to Mr. Benjamin and violated his statutory and common law rights as guaranteed by the Constitution and laws of the State of New Jersey.

102. The Individual Defendants' violations of that right caused Mr. Benjamin to suffer physical, mental, emotional, and economic damages.

### COUNT SIXTEEN
### *Respondeat Superior* Liability for State Law Violations
*Against the Municipal Defendants*

103. The Individual Defendants' acts and omissions described above, which caused Mr. Benjamin's physical, mental, emotional, and economic damages, occurred while the Individual Defendants were acting under color of state law, in and during the course and scope of their duties and functions officers of the Municipal Defendants, and while they were acting as agents and employees of the Municipal Defendants, clothed with and invoking state power and authority.

104. The Municipal Defendants are thus liable for Mr. Benjamin's injuries under the state common law doctrine of *respondeat superior*.

## COUNT SEVENTEEN
### Negligent Hiring, Screening, Retention, Supervision, and Training
*Against the Municipal Defendants*

105. The Municipal Defendants negligently hired, screened, retained, supervised, and trained the Individual Defendants, whose acts and omissions described above caused Mr. Benjamin to suffer physical, mental, emotional, and economic damages and violated his statutory and common law rights as guaranteed by the constitution and laws of the State of New Jersey.

## JURY DEMAND

Mr. Benjamin demands a trial by jury in this action on each and every one of his damages claims.

## PRAYER FOR RELIEF

Mr. Benjamin demands judgment against all Defendants, individually and jointly, and prays for the following relief:

(a) Compensation for violations of his constitutional rights, pain, suffering, mental anguish, humiliation, lost wages, and other injuries;

(b) An award of punitive damages against the Individual Defendants;

(c) Compensation for the attorneys' fees, costs, and disbursements of this action; and

(d) Any further or different relief the Court may deem just and proper.

Dated: May 6, 2024
      New York, New York

Respectfully submitted,

Luna Droubi
David B. Rankin
Keegan Stephan
BELDOCK LEVINE & HOFFMAN
99 Park Avenue, PH/26th Floor
New York, New York 10016
P: (212) 277-5825
F: (212) 277-5880
E: drankin@blhny.com

        Lynly S. Egyes
        Milo Inglehart
        TRANSGENDER LAW CENTER
        594 Dean Street, Suite 11
        Brooklyn, NY 11238
        P: (510) 587-9696 Ext. 353
        E: lynly@transgenderlawcenter.org

        *Attorneys for Plaintiff*